**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**BRYSON CITY DIVISION**
**CIVIL CASE NO. 2:11-CV-025-MR-DCK**

| | | |
|---|---|---|
| **AMBER NICOLE SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Notice Of Motion And Motion

For Judgment On The Pleadings" (Document No. 14) and Defendant's "Motion For Summary

Judgment" (Document No. 18). This case has been referred to the undersigned Magistrate Judge

pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments,

administrative record, and applicable authority, the undersigned will respectfully recommend that

Plaintiff's "Notice Of Motion And Motion For Judgment On The Pleadings" be denied; that

Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision

be affirmed.

## I. BACKGROUND

Plaintiff Amber Nicole Smith ("Plaintiff"), through counsel, seeks judicial review of an

unfavorable administrative decision on her application for disability benefits. (Document No. 1).

On October 3, 2007, Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*. (Transcript of

the Record of Proceedings ("Tr.") 12). On October 10, 2007, Plaintiff also filed an application for

supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*

Id.  In both applications, Plaintiff alleged disability beginning on September 15, 2007.  Id.  The Commissioner of Social Security (the "Commissioner" or "Defendant") denied both claims initially on April 21, 2008, and again after reconsideration on November 17, 2008.  Id.  Plaintiff filed a timely written request for a hearing on January 6, 2009.  Id.

On May 11, 2010, Plaintiff appeared and testified at a hearing before Administrative Law Judge Ann G. Paschall ("ALJ").  (Tr. 12, 29).  In addition, Kathleen H. Robbins, Ph.D., an impartial vocational expert ("VE"), and Russell R. Bowling, Plaintiff's attorney, appeared at the hearing.  (Tr. 12, 30).  On June 17, 2010, the ALJ issued an unfavorable decision denying Plaintiff's claims.  (Tr. 9-11, 29).  The ALJ's decision became the final decision of the Commissioner on May 3, 2011, when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-4).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 7, 2011.  (Document No. 1).  Plaintiff's "Notice Of Motion And Motion For Judgment On The Pleadings" (Document No. 14) and "Plaintiff's Memorandum Of Law" (Document No. 14) were filed January 2, 2012;  and Defendant's "Motion For Summary Judgment" (Document No. 18) and "Defendant's Memorandum Of Law In Support Of Motion For Summary Judgment" (Document No. 19), were filed April 2, 2012.  On March 19, 2012, the undersigned was assigned to this case as the referral magistrate judge.  The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Martin Reidinger is appropriate.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to:  (1) whether substantial evidence supports the Commissioner's decision;  and (2) whether the Commissioner applied the correct legal standards.

Richardson v. Perales, 402 U.S. 389, 390 (1971);  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence.  Hays, 907 F.2d at 1456 (4th Cir. 1990);  see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence.  Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations.");  Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 15, 2007, and the date

of her decision.[1] (Tr. 12). To establish entitlement to benefits, Plaintiff has the burden of proving

that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S.

137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from

September 15, 2007, through the date of her decision, June 17, 2010. (Tr. 12).

The Social Security Administration has established a five-step sequential evaluation process

for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 29).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since September 15, 2007,  her alleged disability onset date.  (Tr. 14).  At the second step, the ALJ found that Plaintiff's asthma, levoscoliosis, bilateral congenital hearing loss, bipolar disorder, anxiety disorder, and borderline intellectual functioning were severe impairments.  (Tr. 15).[2]  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 16).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform medium work activity, with the following limitations:

> lift/carry 50 pounds occasionally and 25 pounds frequently; sit/stand/walk for six hours each out of an eight hour day; avoid concentrated exposure to extreme heat, extreme cold, extreme humidity, dusts, and fumes; avoid all exposure to high noise environments, dangerous machinery and unprotective heights; limited to work involving unskilled, simple 1-2 step tasks and instructions; limited to work environments involving no more than occasional contact with the public; and cannot work in a high production, high stress work environment.

(Tr. 20).  In making her finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence.  (Tr. 20).  The ALJ found that Plaintiff's "medically

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."  (Tr. 21).

At the fourth step, taking into account Plaintiff's residual functional capacity, the ALJ found that Plaintiff could not perform her past relevant work as she actually performed such work or as such work is generally performed in the national economy.  (Tr. 28).  At the fifth and final step, the ALJ concluded, based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 29).  Specifically, the vocational expert testified that according to the factors given by the ALJ, Plaintiff "would be able to perform the requirements of representative unskilled occupations such as: housekeeping worker/maid" and "surveillance system monitor." (Tr. 28).  The vocational expert "further stated that, in the absence of a Hepatitis C infection, additional jobs would also be available in the food service industry for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity." (Tr. 29).  Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 15, 2007, and the date of her decision, June 17, 2010.  (Tr. 29).

Plaintiff on appeal to this Court makes the following assignments of error:  (1) the ALJ erred by failing to develop the record regarding Plaintiff's Hepatitis C;  (2) the ALJ erred by failing to find that Plaintiff's cognitive impairment met the requirements of Listing 12.05C; (3) Plaintiff's hearing loss meets the requirements of Listing 2.10; (4) the RFC determination is the product of legal error;

(5) the ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's credibility; and (6) the ALJ's step 5 determination is not supported by substantial evidence and is the product of legal error. (Document No. 14, p.6). The undersigned will discuss each of these contentions in turn.

### A. ALJ's Evaluation of Plaintiff's Hepatitis C

In her first assignment of error, Plaintiff argues that the ALJ failed to fully develop the record regarding her Hepatitis C. (Document No. 14, p. 17). Specifically, Plaintiff contends that "the ALJ had a duty to obtain the records related to this condition and erred by failing to fulfill that duty." (Document No. 14, p.17-18). To support her argument, Plaintiff relies on Cook v. Heckler where the United States Court of Appeals for the Fourth Circuit stated, "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." 783 F.2d 1168, 1173 (4th Cir. 1986) (citing Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981); Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)).

While Plaintiff correctly states the ALJ's duty to fully develop the record, she omits the distinction the Fourth Circuit has drawn based on an individual plaintiff's need for the ALJ's assistance to develop the record, particularly with respect to whether the plaintiff is represented by an attorney in the hearing before the ALJ. The Fourth Circuit has explained, "[i]n a great number of cases, courts of appeals have found good cause to remand where the administrative law judge fails diligently to explore all relevant facts especially in cases of uneducated, pro se claimants and where the absence of counsel appears to prejudice a claimant." Walker, 642 F.2d at 714 (citations omitted). In Marsh v. Harris, the Fourth Circuit further explained,

> [Plaintiff's] illiteracy and his obvious lack of understanding of the evidence necessary to develop the critical issues were compounded by the absence of legal representation. Competent counsel could have obtained testimony from [the treating physician] and secured all relevant hospital records ... The conclusion is inescapable that, unassisted, [Plaintiff] was unable to present his case adequately. This should have been obvious to the ALJ, who failed to elicit the available evidence. Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded.

632 F.2d at 300 (citing Cutler v. Weinberger, 516 F.2d 1282 (2nd Cir. 1975); Hess v. Sec'y of Health, Educ. & Welfare, 497 F.2d 837 (3rd Cir. 1974); Hicks v. Mathews, 424 F. Supp. 8 (D. Md. 1976)). It is important to note that in both cases cited by the Cook court, the plaintiffs appeared *pro se* and were either illiterate or had very minimal formal education. See Cook, 783 F.2d at 1173; Walker, 642 F.2d at 714 (*pro se* plaintiff had "only four years of formal education"); Marsh, 632 F.2d at 300 (*pro se* plaintiff described as illiterate).

Here, the ALJ appears to have considered the record in great detail and to have explored potential limitations caused by Plaintiff's alleged Hepatitis C with the vocational expert at the hearing. (Tr. 14-29, 64-67). Moreover, Plaintiff in this case was represented by counsel at the hearing. (Tr. 30-32). Therefore, Plaintiff's reliance on the above case law appears to be misguided. The courts have clearly found that, where a plaintiff is represented by an attorney at a hearing before an ALJ, the ALJ's "duty to ensure that the record is fully and fairly developed" is "relaxed." Walter v. Astrue, 2009 WL 2584817, at *2 (D. Md. Aug. 19, 2009) (citing Cook, 783 F.2d at 1173). "In such a case, the ALJ ordinarily is 'entitled to rely on the [Plaintiff's] counsel to structure and present [the] [Plaintiff's] case in a way that the [Plaintiff's] claims are adequately explored.'" Id. (quoting Hawkins v. Chater, 113 F.3d 1162, 1167-68 (10th Cir. 1997)). In Hawkins, the district court further

circumscribed the ALJ's duty when presented with a plaintiff represented by counsel: "[m]oreover, where the ALJ has questioned the [Plaintiff] about the relevant issues and reviewed the medical records in detail, he has satisfied his duty to assist the [Plaintiff] in developing the record." Id. (citing Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1986)).

The undersigned finds Defendant's argument that "[n]othing in the record indicated that [H]epatitis C caused any symptoms or limitations, and nothing either Plaintiff or her attorney said at the hearing suggested that it formed a basis for her claim of disability" to be persuasive. (Document No. 19, p.6). In order to establish disability, two elements must be established: (1) "there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) "there must be a factual determination that the impairment actually renders [Plaintiff] unable to engage in any gainful employment." Laws v. Celebrezze, 368 F.2d 640, 643 (4th Cir. 1966) (citing 42 U.S.C.A. §§ 416(i)(1)(A) & 423(c)(2)(A) Supp. 1965); Brown v. Celebrezze, 367 F.2d 455 (4th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964)). Furthermore, Plaintiff bears the burden of establishing that she has a medically determinable impairment:

> The applicable regulations, 20 C.F.R. 404.1502(b), *place the burden on a claimant* of establishing 'by medical evidence, and where necessary by appropriate medical tests' that he had medically determinable impairments ... Such impairments may be considered 'medically determinable' only if they 'can be verified by the use of clinical and laboratory diagnostic techniques' and any resulting disability must be shown to be due to 'structural, physiological or psychological changes which can be identified' by the use of such techniques. 20 C.F.R. 404.1510(a).

Mounts v. Finch, 304 F. Supp. 910, 915 (S.D. W.Va. 1969). The Tenth Circuit Court of Appeals addressed the question regarding how much evidence a Plaintiff must "adduce in order to raise an issue requiring further investigation" by the ALJ and found "that the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Hawkins, 113 F.3d at 1167 (citing Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990)).

Here, Plaintiff testified about her recent diagnosis with Hepatitis C, and the ALJ specifically acknowledged this claim, both in her discussion with the vocational expert at Plaintiff's hearing, and in her decision regarding Plaintiff's disability. (Tr. 16, 29, 49, 64). However, in the absence of any objective evidence in the record regarding Hepatitis C, the ALJ found that the impairment is "not medically determinable. (Tr. 16, 29). Furthermore, a review of the record reveals no objective evidence of Plaintiff's alleged Hepatitis C diagnosis. (Tr. 49).

Based on the foregoing, the Court agrees with Defendant that Plaintiff "has failed to carry [the burden to establish a severe impairment] with respect to her [H]epatitis C diagnosis" and finds that the ALJ did not err in failing to further develop the record regarding this alleged condition. (Document No. 19, p.7). See Hawkins, 113 F.3d at 1168 (citing Glass v. Shalala, 43 F.3d 1392, 1394-96 (10th Cir. 1994), where the court "refus[ed] to remand for further development of the record where the ALJ had carefully explored the applicant's claims and where counsel representing [Plaintiff] failed to specify the additional information sought").

**B. ALJ's Assessment of Plaintiff's Cognitive Impairment**

Next, Plaintiff argues that "[t]he ALJ erred by failing to find that Plaintiff's cognitive impairment met the requirements of Listing 12.05C." (Document No. 14, p.18). Specifically, Plaintiff asserts: (1) "the evidence demonstrates or supports the onset of the impairment before age 22 and meets the required IQ score;" and (2) "Plaintiff suffered from both physical and mental impairments imposing an[] additional and significant work-related limitation of function." (Document No. 14, p. 18-19). In response, Defendant contends that despite Plaintiff's verbal IQ score in the range designated in Listing 12.05C, the ALJ's mandated analysis of Plaintiff's adaptive functioning supports "the ALJ's finding that [Plaintiff's] functioning is above the mentally retarded level; i.e., that she does not demonstrate deficits in adaptive functioning." (Document No. 19, p.8-9).

"Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism." Foreman v. Astrue, 2010 WL 3835192, at *5 (S.D. W.Va. Sept. 7, 2010). "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2007). Defendant correctly notes that Listing 12.05 requires more than valid IQ scores to establish mental retardation. (Document No. 19, p.7-11); see Hancock, 667 F.3d at 475 (citing Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior.").

In order for Plaintiff to show that her impairment meets the listing for mental retardation, she must show that her "impairment satisfies the diagnostic description in the introductory paragraph

[of Listing 12.05] and any of one of the four sets of criteria [paragraphs A through D below]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2007). The introductory paragraph requires Plaintiff to have "significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. (emphasis added). The four sets of criteria in Listing 12.05 are as follows:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

> B. A valid verbal, performance, or full scale IQ of 59 or less; OR

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function; OR

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

>> 1. Marked restriction of activities of daily living; or

>> 2. Marked difficulties in maintaining social functioning; or

>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

>> 4. Repeated episodes of decompensation, each of extended duration.

Id.

In the present case, the ALJ acknowledged that Plaintiff's Verbal IQ score of 70 falls within the range provided in paragraph C above, but she found this score to be an invalid representation of Plaintiff's intellectual functioning based on evidence showing that Plaintiff functions at a level higher than that indicated by this score. (Tr. 20). Specifically, the ALJ referred to evidence

showing that Plaintiff "lives alone, drives independently, and has worked for substantial time periods." Id. The ALJ further noted that Plaintiff "completed the eleventh grade and took many regular classes." Id. The ALJ also referenced Plaintiff's testimony regarding her receipt of special education services while in school, but the ALJ found that the services appeared to have been "largely related to her hearing impairment," and that "there [were] no school records confirming a listing level IQ score present prior to age 22." Id. In concluding her analysis of this matter, the ALJ cited "November 2008 treatment notes ... provid[ing] that [Plaintiff's] estimated intellectual functioning was in the average range." Id. Therefore, based on her determination that Plaintiff's Verbal IQ score is not valid, the ALJ concluded that the "'paragraph C' criteria of listing 12.05 are not met." Id.

The issue before the Court here is whether the ALJ erred in invalidating Plaintiff's Verbal IQ score. (Document No. 14, p.18; Document No. 19, p.7). Plaintiff's argument that the ALJ erred is based solely on the psychological evaluation that produced her Verbal IQ score of 70, and Plaintiff makes no reference to the evidence upon which the ALJ based her decision to invalidate this score. (Document No. 14, p. 18-22). Defendant challenges Plaintiff's argument by asserting that Plaintiff must have "deficits in adaptive functioning" in order to have a disabling mental retardation under Listing 12.05. (Document No. 19, p.7). Defendant contends that "[c]ourts routinely acknowledge that IQ test scores alone may not tell the full story, and that under the introductory paragraph to Listing 12.05, an ALJ may properly look to indicators of a claimant's adaptive functioning to determine whether a score in one of the Listed ranges actually demonstrates disabling mental retardation." (Document No. 19, p.8) (citations omitted). In short, while Defendant concedes that Plaintiff's Verbal IQ score is 70, he argues that "[t]he ALJ's analysis of

Plaintiff's adaptive functioning was not only required by the Listing's introductory paragraph, but also entirely reasonable in this inherently borderline situation." (Document No. 19, p.8-9). Defendant also highlights that Plaintiff's Verbal IQ score is "at the very top of the range designated in Listing 12.05C," that "[h]er full scale and performance IQ scores were well above the 12.05C range of 60-70," and that "Plaintiff's own counselor estimated her intellectual functioning as 'average' in November, 2008." Id.

On this issue, the Fourth Circuit recently found "that an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock, 667 F.3d at 474. Further, as Defendant notes, courts have consistently found that an ALJ can look to a plaintiff's actual functional abilities in determining the validity of the plaintiff's IQ score. See id. at 475 ("Here, in discrediting the IQ scores, the ALJ relied on the examiner's omission as well as the results' inconsistency with both the claimant's actual functioning and with the notes of treating psychiatrists. These facts bring this case in line with ... cases from the Third, Fifth, Eighth, Tenth, and Eleventh Circuits in which an ALJ discredited IQ scores based on other evidence contradicting them.").

Based on the foregoing, the undersigned is persuaded by Defendant's argument that the ALJ's analysis of evidence pertaining to Plaintiff's adaptive functioning was entirely appropriate. See id. at 475 (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam) ("[T]est results must be examined to assure consistency with daily activities and behavior.")). Therefore, it is necessary to determine whether the record supports the ALJ's assessment of Plaintiff's adaptive functioning. As Defendant notes, the record reveals that

> Plaintiff has never sought or received treatment for cognitive deficits, as opposed to mood disorders. (Tr. 347, 427)[.] No treating or

14

examining source has ever suggested that she was mentally retarded; she was only noted to have a 'slight academic delay' (Tr. 274), intellectual functioning in the borderline range (Tr. 339), or 'limited intellect.' (Tr. 372)."

(Document No. 19, p.9-10; Tr. 426-437). The undersigned additionally highlights a psychiatrist's assessment of Plaintiff stating,

> [t]hought processes are clear and logical ... adequate behavioral inhibitions are noted, and affect is appropriate to the situation and thought content. [Plaintiff] is aptly depicted as mildly dysphoric/tense. The Mental Status Examination further discloses that recent and remote memory functions are generally intact, [Plaintiff] is well oriented, and there are no overtly unusual behaviors or mannerisms. Attention span, concentration, and memory are represented by [Plaintiff] to be impaired but not inadequate for the completion of most routine h/h chores and work-like tasks. Overall it would be my judgment that the data supports the conclusion that whatever functional restricts exi[st] are due primarily to [Plaintiff's] medical and situational issues, and that there are few discernible impairments in [Plaintiff's] functional capacity to engage in most routine day to day behaviors required for personal care, independent living, and reasonable social / avocational pursuits attributable to a true mental impairment.

(Tr. 424).

Based on the above findings, and on a review of the full record, the undersigned believes that substantial evidence supports the ALJ's conclusion that despite Plaintiff's Verbal IQ score of 70, Plaintiff did not meet the requirements of Listing 12.05C for disabling mental retardation. (Tr. 20). The undersigned reiterates that in fulfilling its duty to review the ALJ's decision, the Court is "not at liberty to 'reweigh conflicting evidence ... or substitute [his] judgment for that of the [ALJ].'" Hancock, 667 F.3d at 476 (citing Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration in original) (internal quotation marks omitted)) (other citation omitted). The undersigned "must

sustain the ALJ's decision, even if [he] disagrees with it, provided the determination is supported by substantial evidence." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

The undersigned additionally notes that Plaintiff focuses much of her argument on this matter on the second prong of Listing 12.05C, which requires Plaintiff to show "a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2007). (Document No.14, p.19-22). The undersigned finds that an analysis of this prong is unnecessary in the present case because Plaintiff can prevail only if she establishes that the ALJ erred in her analysis of both prongs of Listing 12.05C. Therefore, where the undersigned finds substantial evidence supporting the ALJ's analysis under the first prong, a review of the second prong is unnecessary.

### C. ALJ's Assessment of Plaintiff's Hearing Loss

Next, Plaintiff implores the Court to evaluate Plaintiff's hearing loss under the requirements of Listing 2.10, "which revised Listing 2.08 shortly after the ALJ issued [her] decision [in the present case]." (Document No. 14, p.23). Plaintiff does not allege that the ALJ erred in her analysis of Plaintiff's hearing loss using the criteria of Listing 2.08, but instead argues that "[t]he fact that the ALJ rendered his decision on June 17, 2010, which was just weeks before the relevant listing was revised on August 2, 2010, should not be held against Plaintiff, who suffered from severe hearing loss her entire life." Id. As Defendant notes, "Plaintiff does not assert that she met the requirements of Listing 2.08, in effect during the pendency of her claim, or challenge the ALJ's reliance on the state agency physicians' opinions to find that she did not meet it." (Document No. 19, p.12).

In response to Plaintiff's allegation, Defendant contends that "the ALJ properly applied the now-superceded Listing 2.08 rather than its replacement to determine Plaintiff's pending disability claims" based, in part, on the fact that "the Commissioner in effectuating Listing 2.10 to replace Listing 2.08 publicly announced his determination that the new Listing would not be retroactively applicable to decisions predating August 2, 2010 ... ."  (Document No. 19, p.11-12).  Based on a review of the Social Security Administration's (SSA) guidance regarding Listing 2.10, the Court agrees with Defendant that the ALJ correctly applied Listing 2.08 when assessing Plaintiff's claim of disabling hearing loss.

The SSA's final rules on this matter clearly state that the revised criteria found in Listing 2.10 apply only "to new applications filed *on or after the effective date* of the final rules and to claims that are pending *on and after the effective date*."  Revised Medical Criteria for Evaluating Hearing Loss, 75 Fed. Reg. 30693-01 (June 2, 2010) (to be codified at 20 C.F.R. pt. 404) (emphasis added).  The rules explain:

> [t]his means that we will use these final rules on and after their effective date in any case in which we make a determination or decision.  We expect that Federal courts will review our final decisions *using the rules that were in effect at the time we issued the decisions*.  If a court reverses the Commissioner's final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.

Id. at n.1 (emphasis added).

In the present case, the ALJ issued her decision on June 17, 2010, while Listing 2.10 did not become effective until August 2, 2010.  20 C.F.R. § 404.  (Tr. 9).  Therefore, the undersigned finds that Listing 2.08 was in effect at the time of the ALJ's decision.  The undersigned also finds that the

final rules clearly instruct the Court to review the ALJ's decision using Listing 2.08. Accordingly, where there is no allegation that the ALJ erred in rendering her decision pursuant to Listing 2.08, the undersigned finds that the ALJ's decision on this matter is supported by substantial evidence.

### D. ALJ's Determination of Plaintiff's RFC

Next, Plaintiff argues that the ALJ erred in determining that Plaintiff has the RFC to perform medium work with certain additional limitations. (Document No. 14, p.24). Specifically, Plaintiff asserts that the ALJ improperly evaluated two medical opinions and consequently "erred by failing to place the greater stress-related restrictions on Plaintiff." (Document No. 14, p.24-26). In response, Defendant contends that "[t]he ALJ's findings are fully supported by the record," and that Plaintiff essentially asks the Court to re-weigh the evidence and to draw different factual conclusions. (Document No. 19, p.14, 15).

Plaintiff first argues that the ALJ incorrectly interpreted Dr. Todd-Pillman's psychological evaluation. (Document No. 14, p.24-25). Here, the ALJ declined to accept "Dr. Todd-Pillman's opinion suggest[ing] the need for greater stress-related restrictions" based on the fact that this opinion appeared to be based on Plaintiff's stress tolerance upon her asthma symptoms, and also based on facts showing that Dr. Todd-Pillman is a psychologist, did not conduct a physical examination of Plaintiff, and "the medical evidence related to [Plaintiff's] asthma ... does not suggest an inability to engage in day to day work activities." (Tr. 26-27).

Second, Plaintiff argues that "the ALJ similarly improperly rejected a portion of Dr. Gimon's opinion." (Document No. 14, p.25). Here, the ALJ rejected Dr. Gimon's opinions "suggest[ing] the need for greater stress tolerance and social restrictions." (Tr. 27). The ALJ found this opinion to be at odds with evidence showing that Plaintiff

> could handle the stress associated with simple 1-2 step tasks performed outside of a high production, high stress work environment ... [Plaintiff] lives independently, cares for her personal needs, drives, shops, performs housework, and goes out to eat and to movies ... She can also handle bank accounts and pay bills. Moreover, the evidence establishes that [Plaintiff] can form and maintain relationships. As discussed, [Plaintiff] has friends, speaks with her grandmother on a nearly daily basis, and has had at least 3 romantic relationships since the alleged onset date.

Id.

In evaluating the findings of a psychological consultant, such as those provided by Drs. Todd-Pillman and Gimon, the ALJ is required to consider factors such as supporting evidence in the case record. 20 C.F.R. § 404.1527(e)(ii). Further, in conducting this evaluation, the ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. 20 C.F.R. § 404.1527(e)(i).

The undersigned notes that the ALJ did not reject Dr. Todd-Pillman and Dr. Gimon's opinions as a whole. (Tr. 26-27). In fact, the ALJ gave both opinions "some" weight and found that they were somewhat consistent with the ALJ's conclusion that Plaintiff "must avoid high production, high stress work environments and should only have occasional contact with the public." (Tr. 27). In short, the issue at hand is whether the ALJ should have interpreted both opinions as calling for greater stress-related restrictions on Plaintiff's RFC and incorporated such restrictions accordingly.

The undersigned is persuaded by Defendant's argument that "[i]t was the ALJ's prerogative to make findings of fact, and to resolve the evidentiary conflicts between Dr. Todd-Pillman's and Dr. Gimon's opinions, on the one hand, and Plaintiff's documented activities and capabilities, on the other." (Document No. 19, p.15). The undersigned finds that the ALJ expressly considered

these opinions along with other evidence in the record and carried out her duty to resolve conflicts presented by the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King, 599 F.2d at 599).

The undersigned additionally finds substantial evidence in the record to support the stress-related limitations imposed by the ALJ on Plaintiff's RFC. In fact, the ALJ's restrictions may be stronger than those called for by the psychological evaluations in the record. For instance, Dr. Todd-Pillman's assessment finds that "[Plaintiff] does not have problems going out in public. During the work season, she works full time." (Tr. 339). This assessment goes on to state that "Plaintiff displayed a relatively good frustration tolerance ... [s]he demonstrated the ability to relate to others, as she was pleasant and cooperative throughout the testing process." (Tr. 339, 341). Another consultant concluded that "there are few discernible impairments in [Plaintiff's] functional capacity to engage in most routine day to day behaviors required for personal care, independent living, and reasonable social / avocational pursuits attributable to a true mental impairment." (Tr. 393). Moreover, while Plaintiff's former boyfriend reported that she does not get along well with authority figures, and that she does not handle stress very well, he also reported that Plaintiff has never been fired or laid off from a job because of problems getting along with other people, and that she does not have any trouble getting around on her own on a regular basis. (Tr. 181, 184).

This evidence appears to support the ALJ's assessment that Plaintiff "is limited to work environments involving no more than occasional contact with the public ... [and Plaintiff] cannot work in a high production, high stress work environment." (Tr. 20). Therefore, based on a review of the full record, the undersigned believes that the ALJ's RFC determination incorporating certain stress-related limitations is based on substantial evidence.

**E. ALJ's Assessment of Plaintiff's Credibility**

Next, Plaintiff argues that "[t]he ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's credibility." (Document No. 14, p.26). Specifically, Plaintiff contends that "the ALJ erred by considering only the consistency of Plaintiff's statements with the ALJ's own RFC finding." (Document No. 14, p.27). Plaintiff also contends that "while the ALJ summarized Plaintiff's testimony ... the ALJ erred by failing to consider all of the required factors." Id. In response, Defendant asserts that "Plaintiff's argument challenges a word structure which is doubtless familiar to this court, as it is widely used by ALJs if not most decisions involving less than fully favorable credibility assessments. This argument elevates semantics over substance, but does not undermine substantial evidence supporting the ALJ's findings." (Document No. 19, p.17).

Additionally, Defendant claims that "[t]he ALJ identified substantial evidence in support of her credibility findings." Id. Specifically, Defendant contends that the ALJ "reasonably found that Plaintiff's inconsistent admissions of her drug use ... reflected negatively on her credibility ... reasonably found that if Plaintiff was indeed experiencing the degree of mental functional limitations she alleged, she would seek and comply with more regular specialized treatment ... [and] properly considered [Plaintiff's relatively wide range of daily activities] in the context of assessing her credibility." (Document No. 19, p.17-18).

The undersigned is persuaded by Defendant's arguments on this issue. As an initial matter, the undersigned agrees with Defendant that Plaintiff focuses on words, rather than substance, in challenging the ALJ's statement that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment." (Document No. 14, p.27; Tr. 21). Another district court dismissed a similar argument, finding that

> [the ALJ] did not discredit her testimony *because* it was inconsistent with his residual function capacity assessment. Rather, he explained that he was rejecting it *to the extent* it was inconsistent with his assessment and then went on to explain *why* he was rejecting it.

Barry v. Astrue, 2010 WL 3168630, at *10 (D. Ariz. Aug. 10, 2010). This analysis is applicable to Plaintiff's argument in the present case. Accordingly, the undersigned believes Plaintiff's initial argument is without merit and turns to a review of the substance of the ALJ's decision regarding Plaintiff's credibility.

Here, it appears to the undersigned that the ALJ relied upon substantial evidence when deciding to partially discredit Plaintiff's claims regarding her symptoms and limitations. (Document No.14, p.22; Tr. 21-23). SSR 97-6p provides guidance to an ALJ making a determination about a plaintiff's credibility:

> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as:
>
> * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
>
> * The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work.

SSR 96-7p, 1996 WL 374186, at *5-6.

The undersigned finds that the ALJ identified substantial evidence within the record that conflicts with Plaintiff's statements about her symptoms and limitations. For instance, the ALJ notes numerous instances in which Plaintiff's claims denying a history or use of alcohol or illegal drugs are at odds with medical evidence indicating Plaintiff's longstanding and regular use of marijuana and methadone. (Tr. 22). The ALJ further notes that at the May 11, 2010 hearing, Plaintiff testified that she had never used heroin, while medical records dated December 2, 2009 and January 13, 2010 disclosed Plaintiff's prior heroin addiction and recent use of IV heroin. Id. The ALJ's analysis of Plaintiff's drug use is also supported by Plaintiff's testimony that she recently used marijuana, as well as by medical records indicating Plaintiff's drug use. (Tr. 47, 338, 349, 432, 447, 452)

Additionally, the ALJ found, "contrary to [Plaintiff's] testimony of disabling symptoms, the record indicates that she has not consistently pursued or followed through with mental health treatment." On this issue, the Fourth Circuit has stated, "[t]he regulations specifically provide that in evaluating the intensity and extent of pain, consideration must be given to the medication and medical treatment a [Plaintiff] receives to alleviate her symptoms as well as any other measures or 'home remedies' a [Plaintiff] uses to relieve her symptoms." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (citing 20 C.F.R. § 416.929(c)(iv)-(vi); S.S.R. 90-1p at 4). Additionally, the Fourth Circuit has stated, "an unexplained inconsistency between the [Plaintiff's] characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the [Plaintiff's] credibility." Id. (citing 20 C.F.R. § 41.929(c)(4); Dover v. Bowen, 784 F.2d 335, 337 (8th Cir. 1986)).

In the present case, the ALJ's comparison of Plaintiff's testimony regarding her alleged disabling symptoms with the record indicating that Plaintiff has not consistently pursued or followed through with mental health treatment is in line with these decisions by the Fourth Circuit. (Tr. 22). Additionally, the record supports the ALJ's finding on this inconsistency. For example, a medical record dated August 13, 2003 reports that Plaintiff was "not taking Prozac regularly [and] ha[d] stopped altogether some time ago," and other medical reports suggest medical providers' continued attempts to address Plaintiffs' compliance with her prescribed medical treatments. (Tr. 298, 304, 439). Based on the above analysis, the undersigned is persuaded by Defendant's argument that "[t]he ALJ reasonably found that if Plaintiff was indeed experiencing the degree of mental functional limitations she alleged, she would seek and comply with more regular specialized treatment." (Document No. 19, p.18).

Finally, the ALJ found that "evidence of [Plaintiff's] activities is also contrary to her statements regarding the severity of her symptoms and limitations. This evidence further demonstrates that [Plaintiff] has the capability of performing work fitting within the above set forth limitations." (Tr. 23). As Defendant notes, the Social Security Rules direct the ALJ to consider evidence of Plaintiff's daily activities as part of her assessment of Plaintiff's credibility. (Document No. 19, p.18). See SSR 96-7, 1996 WL 374186, at *5. Furthermore, the Rules provide that the ALJ can look to non-medical sources, such as family and friends, for "information from which inferences and conclusions may be drawn about the credibility of the individual's statements." Id., at *6.

In accordance with these Rules, the ALJ considered information provided by Plaintiff's former boyfriend, Matthew Dowell Jones, to support her finding that Plaintiff "lives independently; performs personal care activities without problems; drives ... shops in stores ... goes outside daily;

leaves home alone; performs household cleaning daily ... cares for pets; prepares simple meals daily; calls her grandmother and other family members on a regular basis; goes out to eat and to watch movies ... ." (Tr. 23, 178-85). Moreover, a full examination of Plaintiff's record supports the ALJ's assessment of Plaintiff's daily activities. For instance, in a report completed by Plaintiff on October 22, 2007, Plaintiff confirmed that her daily activities include taking care of her personal hygiene, helping her grandmother clean her house, assisting her crippled grandfather, caring for her dog, preparing her own meals, shopping, and watching television. (Tr. 208-215).

The undersigned finds the Fourth Circuit's opinion in Johnson v. Barnhart instructive. 434 F.3d 650. In Johnson, the ALJ found that the plaintiff's complaints of pain were "inconsistent with her testimony of her routine activities," where the plaintiff "testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor." Id. at 658. Reviewing the ALJ's decision, the Fourth Circuit stated, "[t]he ALJ logically reasoned that the ability to engage in such activities is inconsistent with Johnson's statements of excruciating pain ... ." Id. (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day)).

Ultimately, the Fourth Circuit affirmed the district court's decision denying the plaintiff's motion for summary judgment and affirming the Commissioner's motion for summary judgment. Id. at 658. The Court found, "[a]lthough we cannot make credibility determinations, we are empowered to review the ALJ's decisions for substantial evidence, and we find that substantial evidence supports the ALJ's credibility assessment." Id. at 653 (citing Craig v. Chater, 76 F.3d 585,

589 (4th Cir. 1996) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on ... the ALJ.") (internal quotation marks omitted in original)).  Following this analysis by the Fourth Circuit, the undersigned finds that the ALJ properly considered evidence of Plaintiff's daily activities in assessing Plaintiff's credibility.

Plaintiff also argues that "the ALJ erred by failing to consider all of the required factors." (Document No. 14, p.27).  Specifically, Plaintiff contends that the ALJ failed to consider Plaintiff's testimony that "she 'flip[s] out' and experiences bad mood swings" and "that she feels really depressed."  (Document No. 14, p.27-28).  However, as Defendant notes, "the ALJ expressly acknowledged this testimony."  (Document No. 19, p.19; Tr. 21).  Plaintiff further alleges that the ALJ "failed to explicitly consider that Plaintiff lives alone because she 'do[es] better' when she is alone ... [and that] Plaintiff requires assistance."  (Document No. 14, p.23).  Again, the ALJ explicitly acknowledged that "[Plaintiff] generally has trouble getting along with other people and that she prefers to be by herself," "loses control of her behavior at times and curses and yells at people ... and sometimes has no desire for human interaction and does not want to leave her home." (Tr. 21).  The ALJ also noted that "there is no evidence that [Plaintiff] is dependent upon others for her personal needs," and that "[Plaintiff] acknowledged that she lives alone and has done so during much of the time period at issue." (Tr. 19).  Moreover, the ALJ's determination that Plaintiff is able to function independently is supported by evidence found in the record.  For instance, Mr. Jones stated that Plaintiff can handle money, including bills, and that her ability to do so has not changed as a result of any illnesses, injuries, or conditions.  (Tr. 181-82).  In fact, Plaintiff herself affirmed her ability to handle money, bills, a savings account, and a checkbook/money orders.  (Tr. 211-12).

Based on the foregoing, it appears to the undersigned that "the ALJ conducted the proper analysis in a comprehensive fashion and cited substantial evidence to support [her finding]," and the undersigned finds no error in the ALJ's credibility determination. Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

### F. Opinion of Vocational Expert

Finally, Plaintiff argues that due to the errors alleged, "the VE's testimony cannot provide substantial evidence to support the decision. Moreover, the hypothetical questions fail to take into account Plaintiff's need for hearing aids." (Document No. 14, p.23-24). The undersigned finds this argument to be unpersuasive. As Defendant notes, "[a] VE's testimony is relevant to the ALJ's Step 5 decision when it responds to a hypothetical question that fairly set out all the [Plaintiff's] impairments ... and when the [Plaintiff's] representative has had an opportunity to correct any purported deficits in that hypothetical." (Document No. 19, p.20) (citations omitted).

Here, the Fourth Circuit has stated, "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [Plaintiff's] impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). Furthermore, the Fourth Circuit has determined that any possible defects in an ALJ's hypothetical are cured when the plaintiff's attorney is given the opportunity to pose questions to the VE. See Shively v. Heckler, 739 F.2d 987, 990-91 (4th Cir. 1984) ("Although it might have been prudent for the ALJ to pose the questions himself, any possible defect was cured by the attorney's questions.").

In the present case, the record shows that the VE listened to testimony from the hearing, reviewed the record, and was fully informed of the ALJ's determinations regarding Plaintiff's

abilities and limitations. (Tr. 61-67). The hypothetical posed by the ALJ was detailed and included the ALJ's findings regarding Plaintiff's alleged impairments, including Plaintiff's hearing. (Tr. 63-67). In fact, the ALJ made repeated references to her determination limiting Plaintiff's exposure to "high noise environments," and she specifically asked the VE whether Plaintiff would be able to undertake the proposed jobs in light of her hearing ability. (Tr. 63, 66). Moreover, the VE's testimony is further supported by the fact that "Plaintiff's counsel was afforded the opportunity to modify [the] hypothetical, but failed to do so." (Document No.19, p.20; Tr. 67-69).

The undersigned finds that the ALJ's hypothetical question "'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006). Therefore, it is "unimpeachable," and the VE's corresponding testimony should have been considered and constitutes substantial evidence supporting the ALJ's step 5 determination. Id.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson, 434 F.3d at 653. As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Notice Of Motion And Motion For Judgment On The Pleadings" (Document No. 14) be **DENIED**;  Defendant's "Motion For Summary Judgment" (Document No. 18) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Martin Reidinger.

**IT IS SO RECOMMENDED**.

Signed: July 2, 2012

David C. Keesler
United States Magistrate Judge